**STATE of Iowa, Appellee,**

v.

**Benjamin WHITE, Jr., Appellant.**

**No. 56592.**

Supreme Court of Iowa.

Nov. 13, 1974.

John R. Hearn, Des Moines, and Michael J. Laughlin, Urbandale, for appellant.

Richard C. Turner, Atty. Gen., Thomas Mann, Jr., Asst. Atty. Gen., and Rodney Ryan, Asst. County Atty., for appellee.

Submitted to MOORE, C. J., and MASON, UHLENHOPP, REYNOLDSON and McCORMICK, JJ.

MOORE, Chief Justice.

Defendant, Benjamin White, Jr., appeals from conviction and sentence for breaking and entering in violation of Code section 708.8. His sole assigned error is: "The trial court erred in its failure to sustain the defendant's motion for directed verdict made at the conclusion of all evidence inasmuch as there was insufficient evidence presented by the State at defendant's trial to warrant submission of the case to the jury." We do not agree.

The applicable principles of law are well established. On an appeal challenging the sufficiency of the evidence we view the evidence in the light most favorable to the State and accept all reasonable inferences tending to support the verdict. If there is any substantial evidence reasonably supporting the charge the cause should be submitted to the jury. It is necessary to consider only that evidence which would support the verdict. State v. Graham, Iowa, 221 N.W.2d 258, 259, 260; State v. Dewey, Iowa, 220 N.W.2d 629, 631; State v. Reeves, Iowa, 209 N.W.2d 18, 21; State v. Shurman, Iowa, 205 N.W.2d 732, 733, 734 and citations in each.

The finding of guilt by the jury is binding on us unless we are satisfied it is without substantial support in the evidence or is clearly against the weight thereof. State v. Bone, Iowa, 201 N.W.2d 80, 81; State v. Parkey, Iowa, 200 N.W.2d 518; State v. Gray, Iowa, 199 N.W.2d 57, 59; State v. Werner, Iowa, 181 N.W.2d 221, 222. In State v. DeRaad, Iowa, 164 N.W.2d 108, 112, we say: "It is only when the evidence which the trier of the fact has relied upon is inherently or patently incredible that this court will substitute its judgment for that of the fact finder."

With these principles in mind we review the record, including the trial transcript.

On Friday, January 26, 1974 shortly before 8:00 a. m. both Mr. and Mrs. Ollie Sloan, Jr. left their apartment at 1349 Jefferson Street in Des Moines. They went to their respective places of employment. Mr. Sloan returned from work about 12:45 p. m. He observed the door to his ground level apartment standing open. It was earlier closed and locked. On examination Sloan found the door lock had been pried open. Once inside he discovered their $900 television set missing and that a footlocker had been removed from the closet in the bedroom used exclusively by Mr. and Mrs. Sloan. It was on the bed and had been pried open. Some of the contents were on the bed. Several gun shells had been removed from a drawer and were also on the bed. Nothing was stolen from the footlocker. Mrs. Sloan was notified of the break-in and returned home.

The Sloans immediately considered defendant, Mrs. Sloan's brother, a suspect. He had been permitted to stay with them several days while looking for work. For some unknown reason he had not been at the apartment after the preceding Tuesday. While there defendant was not authorized to enter the bedroom of the Sloans. He had no permission to touch the footlocker which had not been moved for many days prior to the break-in. Defendant had asked his sister where she kept her gun. Although not a fact, she told him it was in the footlocker. Defendant upon his inquiry had been advised the apartment above that of the Sloans was unoccupied. They were the only two apartments in the building.

Police investigation included taking fingerprints from the metal surface of the footlocker. It was dusty except where the prints were found. Comparison of the prints with those of defendant in the police department records disclosed the fingerprints on the locker were those of defendant. On trial defendant so stipulated. No other fingerprints were found on the footlocker.

The testimony of Jerry Wilson, Des Moines police identification technician included:

"Q. Mr. Wilson, would you describe briefly what you mean by static dust? A. It is the type of dust in anybody's home that is in the air, and a certain type of static electricity draws it to a certain object, furniture, so on.

"Q. Static dust could be floating in this room at this very moment, is that right? A. Yes.

"Q. And it could be lighting on furniture and tables? A. Yes, sir.

"Q. The prints that you observed on the foot locker on January 26th that you took and have in Exhibit C, did they appear to

have an accumulation of static dust on top of them? A. I could see the outline of the prints on the chest where the dust had been disturbed in the lock area.

"Q. In other words, did they appear to you to be very fresh? A. Yes.

"Q. Mr. Wilson, in your experience, could you give an estimate as to how fresh those prints were? A. Not scientifically; just not very old at all.

"Q. Days or hours or minutes or do you have any idea? A. A day or two probably.

"Q. Pardon me? A. Probably a day or two.

"Q. And you took these prints on when? A. January 26th.

"Q. Did you take all of the smudges and everything or just the— A. Just the legible prints.

"Q. So there were other prints on the foot locker which might have been smudges that you did not lift off? A. Yes.

"Q. Now, when you say a day or two, do I understand you to say that is as old as they could be? A. No, unable to tell. There was no new dust on top of where the prints were found."

Regarding a telephone conversation with defendant, Mrs. Sloan testified: "When I talked to him on the phone I said, 'Where is my TV set?' He said, 'I didn't take it, Michael Porter did.' * * * I just said, 'Where's my TV at?' And he said, 'Mike Porter's got it,' and he said, 'I don't have to say no more.'"

This case is factually similar to State v. Sellers, Iowa, 215 N.W.2d 231 where we point out evidence to defeat a motion for directed verdict must generate something more than suspicion, or speculation, or conjecture. The applicable general rules in this area of the law are analyzed and discussed in State v. Jellema, Iowa, 206 N.W.2d 679 at 681. Repetition is unnecessary.

 By our review of the entire trial record we conclude the State's evidence generated more than suspicion, or speculation or conjecture. We hold there was substantial evidence reasonably supporting the charge against defendant. The trial court did not err in overruling the motion for directed verdict.

Affirmed.